1
2
3
4
5
6
7
8

9 **UNITED STATES DISTRICT COURT**

10 **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 ANASTASIA KIRKEBY,                         CASE NO. 13cv377 WQH-MDD

13                            Plaintiff,

vs.                                         **ORDER**

14

15 JP MORGAN CHASE BANK, N.A.;
CALIFORNIA RECONVEYANCE
COMPANY; and FIDELITY

16 NATIONAL FINANCIAL, INC.,

17                            Defendants.

18

HAYES, Judge:

19
20     The matter before the Court is the Motion to Dismiss Plaintiff's Sixth Amended

Complaint filed by Defendants JP Morgan Chase Bank, N.A. and California

21 Reconveyance Company. (ECF No. 72).

22 **I. Background**

23
24     On February 15, 2013, Plaintiff Anastasia Kirkeby, proceeding *pro se*, initiated

this action by filing a Complaint against JP Morgan Chase Bank, N.A. ("Chase") and

25 California Reconveyance Company ("CRC"), alleging various state law claims related

26 to the foreclosure of a deed of trust secured with the real property located at 30651

27 Camino de Las Lomas, Escondido, California 92026. (ECF No. 1). On September 23,

28 2014, Plaintiff filed the Sixth Amended Complaint ("Sixth AC"), which is the operative

pleading. (ECF No. 71). On October 10, 2014, Defendants Chase and CRC (collectively "Defendants")[1] filed the Motion to Dismiss the Sixth Amended Complaint, accompanied by a request for judicial notice. (ECF No. 72). On November 3, 2014, Defendants filed a reply. (ECF No. 73). On November 10, 2014, Plaintiff filed a document titled "Seventh Amended Complaint." (ECF No. 75). On November 14, 2014, the Court issued an order striking the "Seventh Amended Complaint" because Plaintiff "did not receive Defendant's consent or leave of the Court before filing the Seventh Amended Complaint, as required by Rule 15(a)(2)." (ECF No. 76 at 2). The Court stated that "Plaintiff shall file any response to the Motion to Dismiss within **ten (10) days** from the date of this Order. Defendant shall file any reply within **seventeen (17) days** from the date of this Order." *Id.* On December 1, 2014, Defendants filed a Reply to Plaintiff's Non-Opposition to Their Motion to Dismiss, accompanied by a declaration. (ECF No. 77). The docket reflects that Plaintiff has not filed an opposition to Defendants' motion to dismiss.

## II. Allegations of the Sixth Amended Complaint ("Sixth AC")

"When Plaintiff got behind on her payments and went into default, Defendants conducted various default-related services on Plaintiff's account, purportedly designed to protect the original lender's and/or investor's interest in the property. However, neither original lender's and/or investor's are permitted to mark-up the fees for such services to earn a profit. Nor are Defendants permitted to assess Plaintiff's account for

---

[1] The Fifth Amended Complaint ("Fifth AC") added Fidelity National Financial, Inc. ("Fidelity") as a Defendant. On March 3, 2014, a summons was issued on the Fifth Amended Complaint as to Fidelity. On July 11, 2014, Plaintiff filed a Proof of Service of Summons on Defendant Fidelity. (ECF No. 68). Plaintiff states that a copy of the Complaint and Summons was sent via facsimile to Defendant Fidelity on May 11, 2014. The filing also includes a Proof of Service form, executed on June 11, 2014, that states that Defendant Fidelity failed to respond to a waiver of service of summons. The filing also includes a facsimile cover sheet indicating that a waiver of service of summons was sent on June 11, 2014. Plaintiff's filing also contains a request to waive service of a summons, executed by Plaintiff, and indicating that the request was sent to Defendant Fidelity on July 11, 2014.

Defendant Fidelity has not filed a responsive pleading to the Fifth AC or Sixth AC or otherwise appeared in this action.

default-related service fees that are unreasonable and unnecessary as they have done with impunity to twenty million distressed homeowners."  (ECF No. 71 at 7). Defendants generated "huge profits from unlawfully accessing default-related service fees onto Plaintiff's account."  *Id.*  These "inflated default-related service fees" were really "inflated interest rates" that were "materially concealed" from Plaintiff.  *Id.*  "Defendants formed various default-related enterprises [associations of subsidiaries and affiliated companies] designed to disguise the hidden marked-up fees, and superfluous fees so that they could earn even more undisclosed profits.  Through these unlawful enterprises, Defendants mark-up the fees charged by vendors, often by 100% or more, and then, without disclosing the mark-up, assess borrowers' accounts for the hidden fees for profit."  *Id.* at 7-8.  "In connection with their fraudulent schemes, Defendants have a practice of routinely assessing fees for default-related services, even when they are entirely unnecessary and clearly inappropriate.  By deploying this tactic, Defendants are able to quietly and clandestinely earn huge profits from default-related service fees --at the expense of distressed homeowners like Plaintiff."  *Id.* at 8.

"The mortgage contract between a lender and a borrower consists of two documents: the promissory note ('Note') and the mortgage or deed of trust ('Security Instrument').  The mortgage contacts serviced by Defendants are substantially similar because they conform to the standard Fannie Mae/Freddie Mac form contract.  These contracts contain form language regarding what occurs if borrowers default on their loans.  The Security Instrument authorizes the loan servicer, in the event of default, to: pay for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property."  *Id.* at 12.  "The Security Instrument further provides that any such amounts disbursed by the servicer shall become additional debt of the borrower secured by the Security Instrument and shall bear interest at the Note rate from the date of disbursement.  The Note provides that the note holder: will have the right to be paid back by [the borrower] for all of its

costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. Thus, the mortgage contract allows the servicer to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrower, but it does not authorize the servicer to mark-up the actual cost of those services to make a profit." *Id.* at 12-13. "Defendants' marked-up fees violate Plaintiff's mortgage agreement because the fees exceed the actual cost of the services, and therefore, they are not, as the mortgage agreement requires, 'reasonable' or 'appropriate' to protect the note holder's and/or investor's interest in the property." *Id.* at 9. "Defendants were aware at the time charged that it was improper to mark-up the fees assessed on Plaintiff's account for default-related services. Therefore, Defendants fraudulently concealed these fees on Plaintiff's account, omitting any information about Defendants' additional profits, or properly identifying them on mortgage statements when billed, and only identified these charges as 'Other Charges,' 'Other Fees,' 'Miscellaneous Fees,' or 'Corporate Advances.'" *Id.*

"Fidelity MSP is a sophisticated home loan management software program co-designed and used by Defendant CHASE on Plaintiff's mortgage account, and is one of the most widely used loan servicing software programs in the United States. When Plaintiff's loan was originated, guidelines for managing her loan was imported into Fidelity MSP, along with 20 million other loans serviced by Defendants. Plaintiff's loan was then automatically managed by the Fidelity MSP software program according to Defendant CHASE's dilatory guidelines." *Id.* at 10. "For example, *inter alia*, if a loan [Plaintiff's loan] in Defendants' systems is past due, the guidelines instruct the computer when to impose late fees. Defendants also assess other charges and fees against borrowers' accounts by using 'wrap around' software packages that work with the Fidelity MSP System. It is this [s]ystem that was used by Defendants on the Plaintiff's account. Based on set parameters inputted into the Fidelity MSP program, the Defendants' computer systems automatically implement decisions about how to

manage borrowers' accounts, including Plaintiff's account, based on 'internal software logic'." *Id.* at 10-11. "Plaintiff is informed and believes, and on that basis, alleges that guidelines inputted into Chase's loan management software system automatically trigger property inspections if a loan is past due by a certain number of days. After a borrower's account is past due by a set number of days, as inputted into the software, Chase's computer automatically generates a work order for a property inspection automatically, and without human intervention. Moreover, so long as a borrower's account is past due by the requisite number of days inputted into the loan management software, Chase's system automatically continues to order inspections, regardless of whether it is reasonable or appropriate under the circumstances." *Id.* at 13-14. "Plaintiff is informed and believes, and on that basis, alleges that even if the property inspections were properly performed and actually reviewed by someone at the bank, Chase's continuous assessment of fees for these inspections on borrowers' accounts is still improper and unreasonable because of the frequency with which they are performed. If the first inspection report shows that the property is occupied and in good condition, it is unnecessary and inappropriate for Chase's system to automatically continue to order monthly inspections. Nothing in the reports justifies continued monitoring." *Id.* at 14.

"When borrowers go into default and Defendants unilaterally decide to perform default-related services, borrowers have no option but to accept Defendants' choice of providers. Taking advantage of these circumstances, Defendants formed the basis of their enterprises with their respective subsidiaries and affiliates, and then, developed a uniform practice of unlawfully marking up default-related service fees through the automated computer software program called Fidelity MSP." *Id.* at 8-9. "Defendant J.P. Morgan Chase & Co., and its subsidiaries, defendant J.P. Morgan Chase Bank, NA, and defendant Chase Home Finance LLC, formed an enterprise and devised a scheme to defraud borrowers and obtain money from them by means of false pretenses. According to Defendants J.P. Morgan's [sic] 2010 Annual Report, '[w]hen it becomes

likely that a borrower is either unable or unwilling to pay, the firm obtains a broker's price opinion of the home based on an exterior-only valuation'." *Id.* at 13. "Plaintiff is informed and believes, and on that basis, alleges that using its computerized automated mortgage loan management system and an enterprise of Chase subsidiaries and inter-company departments and divisions, Chase unlawfully charges marked-up fees for default-related services. Furthermore, to unlawfully conceal its actions and mislead Plaintiff about the true nature of its actions, Chase employs a corporate practice that omits true nature of the fees that are being assessed on her account." *Id.* at 14.

As a result of these practices, Plaintiff has suffered damages "in the form of the difference between the actual cost of the services provided and the marked-up fees assessed on Plaintiff's account" and it keeps Plaintiff "out of reach of ever reinstating the loan by quadrupling amounts owed, coupled with the assessment of marked-up fees using Fidelity MSP...." *Id.* at 14. Plaintiff's payments are applied to the fees first, "so there is not enough to cover the entire monthly payment." *Id.* at 15. Plaintiff's injuries were compounded by Defendant Chase intentionally delaying Plaintiff's loan modification application.

The caption of the Sixth AC asserts the following claims for relief: (1) violation of the Unfair Competition Law, California Business & Professions Code section 17200 *et seq.* ("UCL"); (2) violation of the "Unfair Debt Collection Practices Act," California Civil Code section 1788, *et seq.*; (3) violation of the Consumer Legal Remedies Act, California Civil Code section 1750, *et. seq.* ("CLRA"); (4) breach of contract and breach of the duty of good faith and fair dealing (direct contracts); (5) breach of contract and breach of the duty of good faith and fair dealing (3rd party beneficiary); and (6) promissory estoppel. The introductory paragraph of the Sixth AC also asserts claims for (7) "Material Misrepresentation" and (8) negligence. The body of the Sixth AC asserts a claim for (9) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. section 1962(c) ("RICO"). The only claims asserted in the body of the Sixth AC that are captioned or contained in the introductory paragraph

1  are Plaintiff's UCL and CLRA claims.  Plaintiff requests compensatory damages,
2  restitution and disgorgement, treble damages, declaratory and injunctive relief,
3  including an order that Defendants engage in corrective advertising, interest, and
4  attorneys' fees, expenses, and costs.

5  **III.  Motion to Dismiss (ECF No. 57)**

6  Defendants move to dismiss all of Plaintiff's claims for failure to state a claim
7  and on the ground that Plaintiff lacks standing to sue in federal court as a private
8  attorney general on behalf of the people of the State of California.  Defendants request
9  that Plaintiff be denied leave to amend on the grounds that amendment would be futile.
10 Defendants contend that amendment would be futile because Plaintiff failed to cure the
11 deficiencies identified by the Court as to Plaintiff's fraud-based claims in the Fifth AC.
12 Defendants contend that Plaintiff has failed to set forth all of her claims, as instructed
13 by the Court, by listing new claims in the caption only.

14 Plaintiff has filed no response to the Motion to Dismiss.  Plaintiff was notified
15 in the November 14, 2014 Order that she was given an additional ten days to respond
16 to the Motion to Dismiss.

17 **A.  Legal Standard**

18 Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state
19 a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A pleading that
20 states a claim for relief must contain ... a short and plain statement of the claim showing
21 that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule
22 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient
23 facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Dep't*, 901 F.2d
24 696, 699 (9th Cir. 1990).

25 "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
26 requires more than labels and conclusions, and a formulaic recitation of the elements
27 of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
28 (quoting Fed. R. Civ. P. 8(a)).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires ... an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding that averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted).

**B. Private Attorney General on Behalf of the People of the State of California**

Defendant contends that Plaintiff lacks standing to sue as a private attorney general because Plaintiff has failed to demonstrate that injuries suffered by third parties caused her to suffer injury.

The Sixth AC alleges that "Plaintiff ... may appear on behalf of the people of the State of California, in court without the license to practice law that is required of all State Bar members.   See sections 6067 and 6068 of the California Business and Professions Code.  A private attorney general may appear in court '*ex rel.*' on behalf of the 'United States' (*i.e.* the federal government), the State of California, the People of California or the People of the United States of America."  (ECF No. 71 at 4).

"[E]ven if state law provides a litigant in [the] plaintiff's situation has stautory standing to continue to act as a private attorney general in state court, in federal court he must also satisfy Article III standing requirements."  *Stanford v. Home Depot USA, Inc.*, 358 Fed. App'x 816, 819 (9th Cir. 2009).  "A litigant may assert the legal rights or interests of third parties only when (1) the litigant has suffered an injury in fact, giving him a concrete interest in the outcome of the disputed issue; (2) the litigant has a close relationship to the third party; and (3) the third party's ability to protect his own interests in hindered."  *Shaw v. Hahn*, 56 F.3d 1128, 1130 n.3 (9th Cir. 1995) (citing *Singleton v. Wulff*, 428 U.S. 106, 112–16 (1976)).  "Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not."  *Singleton*, 428 U.S. at 113-14.

California Business & Professions Code sections 6067 and 6068 provide the oath requirement for attorneys in California and the duties imposed on attorneys in California, respectively.  Neither provision grants lay individuals a general right to sue on behalf of the people of the State of California.  The Sixth AC is dismissed to the extent it is brought on behalf of the people of the State of California.

### C.  Violation of the UCL

Defendants contend that, as in Plaintiff's Fifth AC, Plaintiff fails to plead with

particularity the fraud underlying Plaintiff's UCL claim. Specifically, Defendants contend that Plaintiff "does not specify the dates or frequency of the allegedly misleading statements, she does not explain how any specific fees charged to her were marked-up or unnecessary, and she does not explain why identifying the fees as Other, Miscellaneous, or Corporate Advances is false or misleading." (ECF No. 72-1 at 13). Defendants contend that Plaintiff's claim under the unlawful prong of the UCL fails because: (1) the criminal statutes that she predicates this claim on provide no private right of action; (2) Plaintiff fails to state a claim for criminal racketeering; and (3) Plaintiff fails to identify what "common law" violations Defendants committed. Defendants contend that Plaintiff's claim under the unfair prong of the UCL fails because it is preempted by the National Banking Act.

Under the UCL, any person or entity that has engaged "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* § 17200. The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 973 P.2d 527, 539 (1999) (internal quotations and citation omitted). The UCL "unlawful" prong essentially "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* at 539–40 (internal quotations and citation omitted). To state a claim under the "fraudulent" prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). California Courts of Appeal have formulated three tests for determining "unfair" business practices, and the Ninth Circuit has approved of two of them. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736-37 (9th Cir. 2007).

Plaintiff's UCL claim alleges that "Chase omit[s] the fact that the amounts they

represent are being owed have been marked-up beyond the actual cost of the services, or they are unnecessary, in violation of the mortgage contract." (ECF No. 71 at 16-17). Plaintiff's UCL claim also alleges that "Defendants' omissions of material facts, as set forth herein, constitute an unlawful practice because they violate Title 18 United States Code section 1341, 1343 and 1962, as well as California Civil Code sections 1572, 1573, 1709, 1710, and 1711, among others, and the common law." *Id.* at 17. Plaintiff's UCL claim further alleges that Defendants' practices constitute "'unfair' business acts" by "withholding material facts from consumers." *Id.* Plaintiff's UCL claim alleges that "Defendants' concealment was made with knowledge of its effect, and was done to induce Plaintiff to pay." *Id.*

Plaintiff's UCL claim sounds in fraud and is subject to the heightened pleading standard of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (noting that a UCL claim "may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading ... as a whole must satisfy the particularity requirement of Rule 9(b).") (citing *Vess*, 317 F.3d at 1103-04). In the Court's September 3, 2014 Order, the Court found that Plaintiff had failed to allege fraud with the particularity required by Rule 9(b):

> The Fifth AC generally alleges Defendants' default-related fees practice and that she was injured as a result, but it alleges no specifics as to the fraud allegedly committed on Plaintiff individually. There are no allegations of the dates or frequency Plaintiff received the allegedly misleading borrowers' statements. There are no allegations describing how the fees were categorized on Plaintiff's statements, or how she relied on each misleading statement.

(ECF No. 70 at 6). The Sixth AC fails to cure the deficiencies of the Fifth AC that were identified by the Court in its September 3, 2014 Order. Plaintiff has failed to "state with particularity the circumstances constituting fraud" that affected Plaintiff individually, such as how and when the allegedly marked-up fees were represented to her or how she relied on Defendants' representations. Fed. R. Civ. P. 9(b). Plaintiff's UCL claim is dismissed.

### D.  Violation of RICO

Defendants contend that Plaintiff's RICO claim fails to meet the heightened pleading standard of Rule 9(b).  Defendants contend that Plaintiff's RICO claim fails to sufficiently allege an enterprise because the alleged enterprise only identifies Chase and its subsidiaries and no other parties.  Defendants contend that Plaintiff fails to allege that any other members of the alleged RICO enterprise associated with Chase to fraudulently conceal marked-up fees.  Defendants contend that Plaintiff fails to allege a pattern of racketeering activity.  Finally, Defendants contend that Plaintiff's RICO conspiracy claim must fail because Plaintiff's substantive RICO claim fails.

Section 1962(c) prohibits "any person employed by or associated with any enterprise" from "conduct[ing] or [participating], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).  "'[P]erson' includes any individual or entity capable of holding a legal or beneficial interest in property[.]" 18 U.S.C. § 1961(3).  "'[E]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individiuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4). 18 U.S.C. § 1962(c) has a distinctiveness requirement, and "liability 'depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162-63 (2001) (citing *Reves v. Ersnt & Young*, 507 U.S. 170, 185 (1993)) (emphasis in original).  In order to allege an association-in-fact enterprise, a plaintiff must allege: (1) "a group of persons associated together for a common purpose of engaging in a course of conduct," (2) "an ongoing organization, either formal or informal," and (3) "the various associates function as a continuing unit."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007).  "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims."  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).

In the Court's September 3, 2014 Order, the Court found that Plaintiff's RICO claim had failed to comply with Rule 9(b). The Court further found that "[t]he conclusory allegation that Chase formed an enterprise with its subsidiaries is insufficient to meet RICO's distinctiveness requirement" and "Plaintiff has failed to allege facts demonstrating that the individual units of this alleged enterprise 'function as a continuing unit.'" (ECF No. 70 at 10).

Because Plaintiff has again failed to plead Defendants' alleged fraud with particularity, the Court finds that Plaintiff's RICO claim is again subject to dismissal for failure to comply with Rule 9(b). As in the Fifth AC, Plaintiff alleges that "Defendant J.P. Morgan Chase & Co., and its subsidiaries, defendant J.P. Morgan Chase Bank, N.A., and defendant Chase Home Finance LLC, formed an enterprise and devised a scheme to defraud borrowers and obtain money from them by means of false pretenses." (ECF No. 71 at 13). Like the Fifth AC, Plaintiff fails to allege sufficient facts demonstrating that these individual units of the alleged enterprise "function as a continuing unit" or, as subsidiaries of the same entity, meet RICO's distinctiveness requirement. *Odom*, 486 F.3d at 552; *see also Chagby v. Target Corp.*, 358 Fed. App'x 805, 807 (9th Cir. 2009) ("Chagby's alternative theory that an enterprise existed between Target Corporation and its wholly-owned subsidiaries fails to meet the distinctiveness requirement of civil RICO claims.") (citing *Living Designs Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). Because Plaintiff has failed to sufficiently allege an enterprise, Plaintiff's has failed to sufficiently allege a violation of 1962(d). *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.") (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). Plaintiff's RICO claim is dismissed.

**E.  Violation of the CLRA**

The Sixth AC adds a claim for violation of the CLRA. Defendants contend that Plaintiff's CLRA claim fails because the CLRA does not apply to residential loans

because a residential loan is not a tangible chattel.  Defendants contend that Plaintiff's CLRA claim fails because Plaintiff has not alleged compliance with California Civil Code section 1782, which requires that a plaintiff notify the person alleged to have violated section 1770 and demand the person rectify the violations.

The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." Cal. Civ. Code § 1761(a). The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). In *Fairbanks v. Superior Court*, 46 Cal. 4th 56 (2009), the California Supreme Court held that life insurance is neither a "good" or "service" that is subject to regulation under the CLRA. *Id.* at 61. Specifically, the court held that life insurance is not a "service" under the CLRA because a "contractual obligation to pay money ... is not work or labor, nor is it related to the sale or repair of any tangible chattel." *Id.* The court further held that "ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the Consumer Legal Remedies Act." *Id.* at 65. In so holding, the court rejected the contention that an insurance company's "service" in "assisting policyholders to keep their policies in force, and in processing claims" falls within the reach of the CLRA. *Id.*

In this case, Plaintiff alleges that "Defendant's loan modification programs are goods and/or services within the meaning of Civil Code § 1761(a) and (b), respectively." (ECF No. 71 at 25).  Plaintiff alleges that Defendants violated the CLRA, *inter alia*, by "engaging in bad faith as to home mortgage loan modification negotiations." *Id.* at 26.  Numerous courts have held, following *Fairbanks*, that residential loan modifications are not encompassed by the CLRA. *See, e.g.*, *Benedict*

*v. Wells Fargo Bank, N.A.*, No. SACV 14-0770, 2014 WL 2957753, at *3 (C.D. Cal. June 30, 2014) ("[T]he Court cannot reconcile Plaintiff's arguments concerning loan modification with *Fairbanks'* reasoning, and other courts haven't been able to either."); *Becker v. Wells Fargo Bank, N.A., Inc.*, No. 2:10-cv-02799, 2011 WL 1103439, at *14 (E.D. Cal. Mar. 22, 2011) ("[P]ursuant to these post-*Fairbanks* authorities, the CLRA does not encompass plaintiff's claims arising from his attempted loan modification."). The Court concludes that Defendants' alleged loan modification program is not a "good" or "service" because a loan modification is a "contractual obligation to pay money" that "is not work or labor, nor is it related to the sale or repair of any tangible chattel." *Fairbanks*, 46 Cal. 4th at 61. Plaintiff's CLRA claim is dismissed.

### F. "Material Misrepresentation"

Defendants contend that Plaintiff's claim for "Material Misrepresentation," which appears on page two of the Sixth AC and nowhere else, fails to meet Rule 8's notice requirements. Defendants contend that "Material Misrepresentation" is not an independent claim but an element of a fraud claim. Defendants contend that Plaintiff fails to plead fraud with particularity as required by Rule 9(b).

The Court finds Plaintiff's claim for "Material Misrepresentation" fails to meet Rule 8's notice requirement by failing to identify the facts "showing that the pleader is entitled to relief" for a "Material Misrepresentation." Fed. R. Civ. P. 8(a). Assuming that Plaintiff's "Material Misrepresentation" claim is based on Defendants "charg[ing] borrowers a fee that is significantly marked-up from the third-party vendors' actual fees for the services" without disclosing the nature of the fees, Plaintiff fails to meet the heightened pleading requirement of Rule 9(b). Plaintiff has failed to "state with particularity the circumstances constituting fraud" that affected Plaintiff individually, such as how and when the allegedly marked-up fees were represented to her or how she relied on Defendants' representations. Fed. R. Civ. P. 9(b). Plaintiff's "Material Misrepresentation" claim is dismissed.

### G. Negligence

The Sixth AC adds a claim for negligence.  Defendants contend that Plaintiff has failed to allege facts supporting the elements of her negligence claim because she only asserts a negligence claim on page two of the Sixth AC and does not mention that claim again.  Defendants contend that Plaintiff has failed to allege that Defendants owed her a duty.

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury."  *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013).  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991).

In this case, the Sixth AC alleges no facts to support Plaintiff's negligence claim.  The Sixth AC fails to allege any facts explaining Defendants' relationship with Plaintiff, or facts which would allow "the court to draw the reasonable inference"  that Defendants owed a duty of care to Plaintiff.  *See Iqbal*, 556 U.S. at 678.  Plaintiff's negligence claim is dismissed.

**H.  Breach of Contract, Breach of the Duty of Good Faith, Promissory Estoppel, and Unfair Debt Collection Practices Act**

The Sixth AC adds claims for breach of contract, breach of the duty of good faith, promissory estoppel, and violation of the "Unfair Debt Collection Practices Act."  Defendants contend that Plaintiff's breach of contract, breach of the duty of good faith, promissory estoppel, and Unfair Debt Collection Practices Act claims should be dismissed because they appear only in the caption.  Defendants contend that Plaintiff fails to even allege the elements of these causes of action, let alone facts to support the elements of these causes of action.

Federal Rule of Civil Procedure 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief...."  Fed. R.

Civ. P. 8(a)(2). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)).

The Court finds that Plaintiff's listing of claims for breach of contract, breach of the duty of good faith, promissory estoppel, and violations of the "Unfair Debt Collection Practices Act" in the caption of the Sixth AC, without further "showing that the pleader is entitled to relief" on those claims in the body of the Sixth AC, fails to comply with Rule 8(a). Fed. R. Civ. P. 8(a); *see also Wooten v. Countrywide Home Loans Inc.*, No. CIV S-11-1791, 2012 WL 1641017, at *3 (E.D. Cal. May 9, 2012) (finding that a "Securities Acts Violations" claim asserted in the caption, coupled with "a vague and general discussion of the Securities Acts of 1933 and 1933, does not clearly set forth any such claim" and "defendants' motions to dismiss could be properly granted for this reason alone.").

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 222 Cal. App. 3d 1371, 1388 (1990). "Every contract imposes on each party an implied duty of good faith and fair dealing. Simply stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (citations and internal quotations omitted). "The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (2005) (citing *Laks v. Coast Fed. Savs. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976)) (internal quotations omitted).

The Sixth AC contains factual allegations that could be supportive of breach of contract, breach of the duty of good faith, and promissory estoppel claims. For example, Plaintiff alleges that her mortgage contracts did not allow Defendants to charge default-related fees above costs or incur fees at frequencies that were unnecessary. However, Plaintiff has failed to allege facts to support essential elements of these claims, *i.e.*, Plaintiff's excuse for nonperformance on her mortgage contracts, as Plaintiff is admittedly in default on her mortgage loan, or how Plaintiff reasonably and foreseeably relied on Defendants' alleged promise to only charge fees that were "appropriate" or "reasonable." (ECF No. 71 at 14). Plaintiff alleges no facts in support of her claim for violation of the "Unfair Debt Collection Practices Act."

Plaintiff's breach of contract, breach of the duty of good faith, promissory estoppel, and "Unfair Debt Collection Practices Act" claims are dismissed.

## IV. Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's Sixth Amended Complaint (ECF No. 72) is GRANTED. The Sixth Amended Complaint is dismissed without prejudice.

Plaintiff is instructed that she must seek leave of Court or Defendants' written consent to file another amended complaint in this case. Fed. R. Civ. P. 15(a)(2). Plaintiff is further instructed that any amended complaint must set forth *all* of Plaintiff's claims for relief and shall be complete in itself without reference to any of the preceding complaints. If no motion for leave to amend the Sixth Amended Complaint is filed within **thirty (30) days from the date of this order**, the Clerk of the Court shall close the case.

DATED:  December 17, 2014

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge